**UNITED STATES of America, Appellee,**

v.

**Vinicio DIAZ–COLLADO, Defendant–Appellant.**

**No. 07, Docket 92–1012.**

United States Court of Appeals, Second Circuit.

Argued Sept. 4, 1992.

Decided Dec. 7, 1992.

Abraham L. Clott, New York City, The Legal Aid Soc., Federal Defender Services Appeals Unit, for defendant-appellant.

Julie Katzman, Asst. U.S. Atty., E.D.N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG, NEWMAN and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

Vinicio Diaz–Collado appeals from a sentence imposed upon him after a judgment of conviction in the United States District Court for the Eastern District of New York, I. Leo Glasser, J., upon a plea of guilty to importing cocaine in violation of 21 U.S.C. § 952(a). The court sentenced Diaz–Collado to 37 months in prison, five years supervised release and a $50.00 special assessment. Diaz–Collado claims that the prison term of 37 months was based on an unjustified departure from the Guidelines established by the United States Sentencing Commission.

## Background

Diaz–Collado was arrested while trying to smuggle cocaine into the United States. After he pleaded guilty in May 1991 to importing a controlled substance, he was sentenced in December 1991. According to the presentence report, Diaz–Collado's total offense level was 14. The report also calculated Diaz–Collado's criminal history score to be eight. He was assigned six points for convictions he had received between 1977 and 1988 and two points because he committed the present offense while on probation. These eight criminal history points translated into a criminal history category (CHC) of IV. An offense level of 14 and a CHC of IV placed Diaz–Collado within a 27 to 33 month sentencing range.

The district court found that the CHC calculated under U.S.S.G. § 4A1.1 did not adequately reflect the seriousness of Diaz–Collado's criminal past. The court found the CHC inadequate in part because it did not reflect certain prior convictions, which the court considered relevant to an accurate assessment of Diaz–Collado's criminal history. The presentence report had assigned no criminal history points to five of Diaz–Collado's prior convictions because each was "outdated" under § 4A1.2(e)(1)–(2) and so excluded under § 4A1.2(e)(3) from the CHC calculation. See United States Sentencing Commission, *Guidelines Manual*, §§ 4A1.2(e)(1)–(3) (Nov.1990).[1] Of

1. These sections provide:
   (e) *Applicable Time Period*
   (1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.
   (2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

the five outdated convictions, four involved automobile thefts committed over the course of one year, and the other was a criminal mischief conviction imposed a few years earlier.

As already indicated, the presentence report listed other convictions that were not outdated, for which Diaz–Collado received criminal history points. These crimes were committed while Diaz–Collado was between 18 and 30 years old. One of these convictions was for robbery, for which Diaz–Collado had been sentenced to five years in prison; Diaz–Collado received three criminal history points in the presentence report for this conviction. Three convictions were for possession of stolen property; Diaz–Collado had been sentenced on these convictions to conditional discharges and received for them a total of two criminal history points.[2] The final offense, though apparently treated as a single offense in the presentence report, was in fact a compound of assault with a dangerous weapon, possession of burglary tools and malicious destruction of property. For this offense, Diaz–Collado had been placed on probation for one year, and was required to make restitution in the sum of $197.32; for this conviction, he received one criminal history point.

All told, these non-outdated convictions (plus two points for committing a crime while on probation) added up to eight criminal history points and a CHC of IV. At sentencing, the district court believed that a CHC of IV failed to convey a true picture of Diaz–Collado's criminal past:

This started back in 1972 when you were only fourteen—I'll skip that. And then you move up to 1976 when you are seventeen, charged with grand larceny, possession of stolen property, unauthorized use of a vehicle. And you get 90 days.

As soon as you get out, you were arrested again, charged with grand larceny of an automobile, possession of stolen property, unauthorized use of a motor vehicle, possession of a controlled substance, 90 days.

No sooner were you out and on October 20th, again, criminal possession of stolen property.

According to your own statement this case stemmed from your robbery at knifepoint from a car with an owner, you got six months. That's what the Presentence Report says.

No sooner than you got out, in May of 1977, again arrested, charged with grand larceny, criminal possession of stolen property, pushing a stolen vehicle on East Houston Street, unlawfully removing the tires from that car; thirty days.

You were just about out a month and later you were arrested again, and according to this report, prosecuted for robbery in the Supreme Court.

According to ·this, you were arrested after placing a razor blade to the occupant of a 1971 Cadillac, forcing him to drive a short distance, then he was ejected from the car.

You were later found in possession of a car, as well as shoes, cash and jewelry that were taken from the victim. You got five years, you were paroled in 1980, discharged from parole in 1982.

Then, in 1984, possession of stolen property, conditional discharge. That was in July.

In September of 1984, possession of stolen property, this was after several Bench warrants were issued before you appeared for sentencing in that case. Conditional discharge.

June, '86, possession of stolen property, you were also charged with possession of a forged instrument, Bench warrant had to be issued for you in that case before you appeared. Conditional discharge.

October 24, 1988, assault with a dangerous weapon, possession of burglar tools[,] destruction of property, this is in

---

(3) Any prior sentence not within the time periods specified above is not counted.

**2.** One of these stolen property offenses received no criminal history points because it had been consolidated with another offense for sentencing purposes.

Massachusetts, one year probation, 197.32 restitution.

And, the following year you were found in default of probation.

The district court went on to mention several outstanding warrants that Diaz–Collado still had pending against him at the time of the sentencing in this case. Finally, the court specifically found

that the criminal history category of four doesn't adequately reflect the seriousness of your conduct. It doesn't adequately reflect that it's more than likely that you are going to continue to commit these crimes.

Accordingly, the court departed four months above the top of the guideline range of 33 months and imposed a sentence of 37 months. This appeal followed.

### Discussion

Diaz–Collado argues that the district court's departure was improperly based, at least in part, upon convictions that were deemed outdated under the Guidelines. While departure on the basis of similar outdated convictions is specifically authorized by the Guidelines, U.S.S.G. § 4A1.2, comment. (n. 8) ("evidence of similar misconduct" may be considered), Diaz–Collado's outdated convictions here were for offenses not similar to the conviction for which he was sentenced. Thus, the precise question we face on appeal is whether the district court erred when it departed on the basis of nonsimilar outdated convictions.

The Sentencing Reform Act directs each district court to "impose a sentence of the kind, and within the range" specified by the Guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); see also U.S.S.G. § 4A1.3, p.s. According to Diaz–Collado, there is nothing about his nonsimilar outdated convictions that would warrant basing a departure on them. They are, he says, "run-of-the-mill old convictions," whose import had already been incorporated into the Commission's judgment

that such convictions do not warrant any criminal history points.

The circuits are split on the availability of nonsimilar outdated convictions as a basis for departures from the Guidelines. Most of the reported decisions have explicitly allowed departures on this basis. See *United States v. Rusher*, 966 F.2d 868, 882 (4th Cir.1992), cert. denied, — U.S. —, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992); *United States v. Aymelek*, 926 F.2d 64, 72–73 (1st Cir.1991); *United States v. Williams*, 910 F.2d 1574, 1578–79 (7th Cir. 1990), vacated on other grounds, — U.S. —, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992); *United States v. Russell*, 905 F.2d 1439, 1444 (10th Cir.1990); cf. *United States v. Andrews*, 948 F.2d 448, 449 (8th Cir.1991) (per curiam) (upholding departure based on nonsimilar outdated convictions without explicitly addressing distinction between similar and nonsimilar convictions); *United States v. Harvey*, 897 F.2d 1300, 1305–06 & n. 3 (5th Cir.) (same), cert. denied, — U.S. —, 111 S.Ct. 568, 112 L.Ed.2d 574 (1990).

The Ninth Circuit, however, has "concluded that the Guidelines reject the possibility that an upward departure could be based on remote convictions having no similarity to the offense for which the defendant is being sentenced." *United States v. Leake*, 908 F.2d 550, 554 (9th Cir.1990). The Supreme Court has not yet resolved the issue of whether the Guidelines "by implication ... prohibit a departure based on nonsimilar outdated convictions." *Williams v. United States*, — U.S. —, —, 112 S.Ct. 1112, 1122, 117 L.Ed.2d 341 (1992).

■ Diaz–Collado does not argue that nonsimilar outdated convictions may *never* be considered as bases for departure. He argues rather that nonsimilar outdated convictions may not be used unless there is something "unusual" about such convictions that would justify a departure. Since Diaz–Collado does not claim that nonsimilar outdated convictions may never be used, we do not think it appropriate to address the issue posed by the Ninth Circuit decision in *Leake*. For purposes of this appeal,

we assume that under certain circumstances nonsimilar outdated convictions may be used as a basis for departing from the Guidelines. That much is common ground between the parties.

Given this assumption, the decision to depart from a specified CHC is regulated by the general principle of § 4A1.3, p.s., which provides: "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." See also *Aymelek*, 926 F.2d at 73 (reading § 4A1.3 to allow departures based on "defendant's remote convictions when and if those convictions evince some significantly unusual penchant for serious criminality").

■ This case illustrates how ignoring nonsimilar outdated convictions can sometimes generate a distorted image of a defendant's criminal past. As the district court observed, at least two features of Diaz–Collado's outdated convictions justified considering them in order to get an accurate account of his criminal history. First, the court noted that Diaz–Collado had received extremely lenient sentences for his outdated convictions. The Guidelines explicitly recognize that departures may be warranted when a defendant's previous sentences had been "extremely lenient ... for a serious offense." U.S.S.G. § 4A1.3, p.s.; cf. *United States v. Nichols*, 912 F.2d 598, 604 (2d Cir.1990) (upholding upward departure based on attempted murder conviction for which defendant received lenient treatment because he was a juvenile).

The district court was also concerned about the "frequency" of the outdated convictions. On the district court's reading of the presentence report, Diaz–Collado would be released from jail only to commit another offense a short time thereafter. This pattern undoubtedly indicated to the dis-

trict court that Diaz–Collado's respect for the law was negligible. This conclusion was surely reinforced by a similar pattern in Diaz–Collado's non-outdated convictions and by the outstanding warrants for Diaz–Collado's failure to appear in other proceedings pending against him. In the end, the totality of Diaz–Collado's criminal conduct, revealed in part by the sequence of outdated convictions, persuaded the district court that placing Diaz–Collado in CHC IV did not adequately reflect the seriousness of his past conduct or the likelihood that he would commit other crimes. We cannot say that this view was unjustified.

■ The district court explicitly articulated the reasons for its departure and, when it elevated Diaz–Collado from one CHC to another, it proceeded sequentially from CHC IV to CHC V. This is consistent with the procedures required for departures under § 4A1.3. See, e.g., *United States v. Cervantes*, 878 F.2d 50, 54 (2d Cir.1989). Moreover, the district court's departure had the effect of increasing Diaz–Collado's sentence from 33 to 37 months. We do not find this four-month increase "unreasonable." 18 U.S.C. § 3742(e)(3); see also *United States v. Maier*, 975 F.2d 944, 949 (2d Cir.1992).

Accordingly, we hold that the district court's decision to depart on the basis of nonsimilar outdated convictions was not, on the facts of this case, improper.[3] We affirm the judgment of the district court.

---

**3.** On this view, it is not necessary to address Diaz–Collado's claim that the outdated convictions were invalid sentencing factors requiring

us to remand under the rule announced in *Williams v. United States*, — U.S. —, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).